HENRY GRAVES, JR., and GEORGE COE GRAVES, individually and as trustees, &c., complainants,

*v.*

HARRIET ISABELLA GRAVES et al., defendants.

[Decided March 2d, 1923.]

1. The rule against perpetuities is in force in this state. That rule is that a trust which would fetter an estate beyond the period of a life or lives in being and twenty-one years afterwards is void.

2. It is the possibility that the period covered by a life or lives in being and twenty-one years afterwards may be exceeded, and not the certainty or even the probability that it will be exceeded, in a given trust, which calls for the application of the rule.

3. Testator by his will provided *inter alia* that the principal of his estate should remain intact without depletion or distribution for the benefit of his grandchildren and their families, the income remaining, after an annuity to his widow for life, to be divided into as many parts as there might be children and grandchildren surviving him, with payment of one such part to each child and grandchild during their natural life; and in the event of there being other children of testator's children—that is, grandchildren, born subsequent to testator's decease, the annual income to be divided into such proportions that each child and grandchild should receive equal shares, and in the event of the decease of any grandchild leaving lawful issue, the share of the income that would have gone to the deceased grandchild, to be paid to such issue in equal shares; and, upon the death of the last surviving grandchild, to divide the principal of his estate, with all accumulations, to and among the issue of grandchildren—that is, among great-grandchildren, share and share alike, the issue of any deceased grandchild to receive the share its parent would have received if living.—*Held*, that the clause "last surviving grandchild" means a grandchild either born during the lifetime or after the death of testator; and, therefore, as a grandchild born after the decease of the testator may be the last survivor of all the class, and as that grandchild may die more than twenty-one years after the death of the last surviving grandchild, who was alive at the death of the testator, the trust created in the latter's will may not terminate within the period of a life or lives in being and twenty-one years afterwards, as provided in the rule against perpetuities, and the trust is therefore void.

4. In theory and contemplation of law it is possible for a man or woman of any age to have issue.

5. A stock dividend is not in the ordinary sense a dividend, which is a cash distribution to stockholders of profits on their investments; but a stock dividend is an increase in the number of shares declared out of profits, the increased number representing exactly the same property as was represented by the smaller number of shares.

6. Infants' rights are not superior to those of adults, and the rights of adults are not to be defeated because the adversary parties are infants.

On final hearing on pleadings and proofs.

*Messrs. Lindabury, Depue & Faulks,* for the complainants.

*Messrs. Parker, Emery & Van Riper,* for Edward H. Graves.

*Mr. J. H. Thayer Martin,* for Duncan H. Graves et al.

*Mr. Norman Grey,* for Jesse R. Salmon, clerk in chancery, guardian *ad litem* of Jean S. Graves et al., infants.

WALKER, CHANCELLOR.

This is a bill for the construction of the will of the late Henry Graves of Orange. He died August 29th and his will was probated September 10th, 1906. The testator left him surviving Harriet Isabella Graves, his widow, and Henry Graves, Jr., Edward H. Graves, George Coe Graves and Daisy S. Smith, his children and only heirs-at-law and next of kin. Henry Graves, Jr., has had four children, as follows: Henry Graves 3d, Duncan Graves, Gwendolyn Graves and George Coe Graves 2d. Henry Graves 3d died since the death of his grandfather, having left his widow, Margaret Dickson Graves, and Mary Dickson Graves, Florence Barbara Graves and Henry Dickson Graves, his children and only next of kin, him surviving. He left a last will and testament appointing his father, Henry Graves, Jr., executor, which will has been probated. Edward H. Graves has one child, a daughter, Jean Stevenson Graves, born after the decease of her grandfather. George Coe Graves has no children. Daisy B. Goff (now

Smith) has one child, a daughter, Isabella Graves Goff (now Metcalf).

The executors of Henry Graves, deceased, the complainants, filed their final account as executors in June, 1907, and thereafter a decree allowing the account as stated was made and filed in the orphans court of Essex county, and the balance of the *corpus* and income of the testator's estate thereupon passed to themselves as trustees under decedent's will. See *Lyon* v. *Bird, 79 N. J. Eq. 157.* All of the persons interested in the will of the testator are parties to this suit.

Henry Graves, the testator, after making several specific bequests, expressed the wish that the principal of his estate should remain intact without depletion or distribution for the benefit of his grandchildren and their families, and to that end, in item 4, he devised and bequeathed all the residue and remainder of his estate, both real and personal, unto his sons Henry Graves, Jr., and George Coe Graves, their heirs and assigns forever in trust, nevertheless, *inter alia:*

"*c.* All increase in shares of stock, special and stock dividends, and other increase in value or accumulations to principal, to be added to principal, the regular yearly income or dividends only to be used for distribution in manner thereinafter provided. *d.* Out of income of the principal the trustees to pay testator's wife during her natural life, in lieu of dower or further interest in his real estate or claim upon personalty the sum of $20,000 per year. *e.* To divide the remaining income into as many parts as there may then be children and grandchildren surviving the testator and pay one of such parts unto each of his children and grandchildren, during their natural life. *f.* In the event of there being other children of his children—that is, grandchildren, born subsequent to testator's decease, the annual income to be divided into such proportions that each child and grandchild shall receive equal shares. *g.* In the event of the decease of any grandchild leaving lawful issue the share of the income which would have gone to the deceased grandchild to be paid to such issue in equal shares. *h.* Upon the death of his last surviving grandchild to divide the principal of his estate, with all accumulations, to and among the issue of grandchildren—that is, among great-grandchildren, share and share alike, the issue of any deceased grandchild to receive the share its parent would have received if living."

Questions of doubt and difficulty having arisen under the will, complainants, Henry Graves, Jr., and George Coe

Graves, individually and as trustees, filed the bill for its construction, and for instructions with reference to their duties thereunder; and they submit that the trust provisions are neither wholly good nor wholly bad; that the gift over to the testator's great-grandchildren on the death of the last surviving grandchild, can hardly be supported; but they submit that the direction to pay income to testator's children and grandchildren, during their lives, creates valid life estates; that there is apparently no objection to the provision for the opening of the trust fund to let in after-born grandchildren; that the provision for adding special and stock dividends to the principal means dividends out of capital, and that regular yearly income or dividends only to be distributed to the life tenants, means income or dividends from earnings as distinguished from dividends out of capital. The defendant Edward H. Graves contends that the entire trust, except for payment of the annuity to testator's widow, is void because it violates the rule against perpetuities. The defendants Duncan Graves, Isabella Metcalf, Harriet Isabella Graves and Daisy B. Smith, contend that the English rule against perpetuities, which we have adopted in this state, should be relaxed, either by giving effect to the testator's intention at such lawful period as may be nearest the time fixed by him, or by holding the gift valid, if it may vest at the end of lives in being; that upon a true construction of the will the whole testament should be sustained. It is argued on behalf of Gwendolyn Graves, George Coe Graves, 2d, and Jean Stevenson Graves, grandchildren, and Mary Dickson Graves, Florence Barbara Graves and Henry Dickson Graves, great-grandchildren of the testator, infant defendants, that the testator intended that his estate should vest upon the death of the last grandchild surviving him, and that that intention should be given effect.

On behalf of the infant defendants, who are interested in sustaining the trust, application is made for the admission of extrinsic evidence to aid the court in interpreting the will. The evidence proffered consists of an affidavit made by a member of the bar, who drew the will and advised the testator in

its preparation, upon instructions from him. The affidavit is acceptable to all counsel, provided its contents are substantive evidence in the cause. Counsel for the infants concedes that if this evidence is to be admitted it must be to explain a latent ambiguity, and he contends that there is a latent ambiguity, which is as to the meaning of the word "surviving" in the clause which provides that upon the death of testator's last "surviving grandchild" the principal shall be divided to and among the issue of his grandchildren, &c., it being argued that as the testator has two classes of grandchildren—those born during his lifetime and one born after his death (and there may yet be others in the latter class)— it cannot be told save by resort to extrinsic facts whether he meant one or both classes.

In *Farnum* v. *Pennsylvania Co. for Insurance, &c.,* 87 *N. J. Eq. 108,* Vice-Chancellor Backes, following a long line of decisions, held that parol evidence of a testator's declarations to show his intention or understanding of his will different from its legal significance, is incompetent. This case was affirmed on his opinion. *Ibid. 652.* My judgment is that the proffered testimony residing in the affidavit is not evidence on this issue, and the affidavit will, therefore, be excluded.

The rule against perpetuities, which is not the creature of statute in our state, but has come to us from the English law, is stated in *Theob. Wills 597,* as follows:

"A limitation by way of executory devise is void as too remote, if it is not to take effect until after the determination of one or more lives in being and upon the expiration of twenty-one years afterwards, as a term in gross and without reference to the infancy of any person who is to take under such limitation, or of any other person, allowance for gestation being made only in those cases where it actually exists. *Thellusson* v. *Woodford, 4 Ves. Jr. 227; 11 Ves. Jr. 112; Cadell* v. *Palmer, 1 Cl. & F. 372.*"

It is argued that this rule has not been authoritatively adopted in this state, although it is conceded that it has been applied many times in this court. This may be a distinction, but, if so, it is one without a difference. To apply the rule

is, to my mind, to adopt it. *In re Smisson, 79 N. J. Eq. 233* (at *p. 242*), Chancellor Pitney held that the rule against perpetuities, adopted by the English courts, obtains in the American states except so far as it may have been changed by statute; and that in this state we have no statute that affects the question. This is the equivalent of a declaration that the rule has been adopted in this state, for it could not obtain here save by adoption. It has been adopted and is in full force. This is recognized by the court of errors and appeals in *Camden Safe Deposit and Trust Co.* v. *Guerin, 89 N. J. Eq. 556.*

*In re Smisson, supra,* it was held that where the vesting of the fee *is not* postponed beyond the duration of specified lives in being at the time of the death of the testator, any limitations of the estate that may be made to take effect in the meantime are not within the rule because they cannot, by any possibility, postpone a vesting of the fee beyond a period permitted by it.

It is the possibility that the period covered by a life or lives in being and twenty-one years thereafter may be exceeded, and not the certainty or even probability that it will be exceeded, in a given trust, which calls for the application of the rule. See *Stout* v. *Stout, 44 N. J. Eq. 479; Hewitt* v. *Green, 77 N. J. Eq. 345; In re Smisson, 79 N. J. Eq. 233; Camden Safe Deposit and Trust Co.* v. *Guerin, 89 N. J. Eq. 556; Kates, Trustee,* v. *Walker, 82 N. J. L. 157.*

In *Stout* v. *Stout, supra,* Vice-Chancellor Bird applied the rule, and observed (at *p. 486*) that it rendered inoperative that portion of the gift which intended that the grandchildren of the testator's daughter, Mrs. Dunham, should have the principal, the interest of which was given to her for life. Mrs. Dunham had one child, and although she was fifty years old, the vice-chancellor remarked that the possibility of childbirth is not removed at the age of fifty. This was a correct statement of the law. And it has recently been decided in this court and in the court of errors and appeals that in theory and contemplation of law it is possible for a woman

of any age to have issue. See *Application of Smith, 94 N. J. Eq. 1,* and cases cited. This doctrine is even more cogently applicable to men. Sir William Blackstone says that the possibility of issue is always supposed to exist unless extinguished by the death of the parties, even though they be each of them one hundred years old. *2 Bl. Com. 125.*

Now, in this case four children and five grandchildren were living at testator's death, and one grandchild and three great-grandchildren were born after his decease. Other grandchildren and great-grandchildren may yet be born. The will directs that in the event of there being other children of testator's children, namely, grandchildren, born subsequent to his death, his trustees are to divide the annual income in such proportions that each child and grandchild shall receive equal shares. Then, upon the death of the last surviving grandchild, to divide the principal, with all accumulations, to and among the issue of his grandchildren, that is, among his great-grandchildren, share and share alike, &c. It is perfectly obvious that other grandchildren may still be born and they, upon birth, would be entitled to share in the income, which would cease only upon the death of the last survivor of them, which might be beyond twenty-one years after the death of all the class living at the time when the will took effect. This probability, or at least possibility, renders void the trust so far as distribution to great-grandchildren at the time of the death of the last surviving grandchild is concerned, which entails intestacy as to the *corpus;* but the question still further is: Is the estate distributable now or at a later period, and if later, when?

And now a word as to what construction should be given to the word "surviving" in the clause "last surviving grandchild." To my mind, the meaning of the testator is perfectly clear. He, of course, well knew that grandchildren might be born to him, so to speak, after his death. That he contemplated it and made provision for them is apparent. In item 4, after providing in paragraph *d* for the payment of the annuity to his wife, he provides in paragraph *e* that the remaining income shall be divided into as many parts

as there may *then* be children and grandchildren him surviving, and that one of such parts shall be paid unto each of said children and grandchildren during their natural life; and in the event of any grandchild being under the age of twenty-one, to pay its share to its guardian; and in paragraph *f,* that in the event of there being other children of his children (that is, grandchildren), born subsequent to his decease, he directs his trustees to divide the annual income in such proportions that each child and grandchild should receive equal shares; and in paragraph *g,* that in the event of the decease of any one of his grandchildren leaving lawful issue, the portion of the income which would have belonged to that grandchild, in equal shares to his or her issue, &c.; and in paragraph *h,* that upon the death of his last surviving grandchild, to divide the principal of his estate, with all accumulations and increases thereon, to and among the issue of his grandchildren, that is, among his great-grandchildren, share and share alike, the issue of *any* deceased great-grandchild to receive the share its parent would have received if living. These provisions, to my mind, evince a clear purpose of the testator to provide for grand and great-grandchildren, and for the termination of the trust and distribution of the *corpus* on the death of his last surviving grandchild, whenever born, whether before or after his death; for, having expressed the wish that the principal of his estate should remain intact for the benefit of his grandchildren and their families, and having provided that after-born grandchildren be let in to enjoy the income of the estate during the continuance of the trust, he proceeds, as I view it, to direct that upon the death of the last surviving grandchild, not surviving him, but surviving in any event, distribution be made of the *corpus* among his great-grandchildren. Thus he created by one class of grandchildren, namely, a class including all of them, whenever born, equality among them being apparently of first importance and solicitude with him.

In *Stout* v. *Stout, Hewitt* v. *Green* and *Kates, Trustee,* v. *Walker, ubi supra,* it was held that trusts for grandchildren born after the death of the testators, which might postpone

the vesting of the *corpus* beyond the time permitted by the rule against perpetuities, were void.

It is conceded by all that the trust for testator's widow of $20,000 per year is valid; and so it is. Therefore, a sufficient part of the estate will have to be held until her death. The next of kin are presently entitled to distribution of the balance of the *corpus* under the statute of distribution, and will be entitled to the balance—that is, the portion held to produce the widow's annuity, on her death.

Now, as to the question concerning all increase in shares of stock, special and stock dividends, and other increase in value or accumulations to principal, and the regular yearly income or dividends. This is important only as it may be involved in the accounting.

In my opinion the meaning of the testator as to accumulations on the one hand, and payment out of income on the other, is plain. A *stock dividend* is not in the ordinary sense a dividend, the latter being a cash distribution of profits to stockholders as income from their investments. A stock dividend is an increase in the number of shares declared out of profits, the increased number representing exactly the same property as was represented by the smaller number of shares. *Kaufman* v. *Charlottesville W. M. Co., 93 Va. 673.* The testator, therefore, meant that stock dividends should be added to the principal. He as clearly meant that special—that is, extraordinary, dividends should be added to principal. The words "and other increase in value and accumulations to principal" must, I think, be considered as meaning no more than stock or special dividends. As the words are general in character and specify no particular sort of value or accumulation, they must be limited to the specific kind of increase, namely, stock and special dividends, and can have no application to regular yearly income or dividends. And this view is strengthened by his direction that regular yearly income or dividends only are to be distributed.

Among the assets of testator's estate are shares of stock of the Delaware, Lackawanna and Western Railroad Company and the Atlas Portland Cement Company. On July 1st, 1909,

the Delaware, Lackawanna and Western Railroad Company declared an extra dividend of fifty per cent. to its stockholders. This is clearly a special dividend and went to increase the *corpus* of testator's estate. On July 15th, 1909, a stock dividend of fifteen per cent. was declared, payable in shares of the capital stock of the company. This, of course, went to increase the *corpus.* On October 26th, 1911, an extra dividend of thirty-five per cent., payable by distribution of stock of the company, was declared. This likewise went to increase the *corpus.* Another one hundred per cent. stock dividend was declared on July 28th, 1921, and went to increase the *corpus.* The regular yearly dividends on this stock have been twenty per cent., and these, according to the terms of the will, have been distributed to the life tenants. In December, 1920, a stock dividend of fifty per cent. was declared by the Atlas Portland Cement Company. This went to increase the *corpus.* The regular dividends of this company during the continuation of the trust have varied from two and one-half per cent. to eight per cent., and were distributed to the life tenants upon the long-entertained theory of the trustees that the trust was valid.

In leaving the questions, I desire to express my regret that I have been unable to reach the conclusion that this trust in favor of grandchildren and great-grandchildren, so clearly expressed by the testator, must be defeated because of the inexorable operation of a rule of construction firmly established in the law. And it is all the more regrettable because it compels a decision against the interests of infant defendants. But, after all, infants' rights are not superior to those of adults, and the rights of adults are not to be defeated because the adversary parties are infants. *In re Shreve, 87 N. J. Eq. 7; affirmed, Ibid. 710.* Where an infant defendant is before the court represented by a guardian, as he always must be, the court protects his interests and, in a sense, represents him. And where doubtful and difficult questions are involved, the court will appoint counsel to represent the guardian. *Bunting* v. *Bunting, 87 N. J. Eq. 20.* This course was taken

in this case. After the appointment of the clerk in chancery as guardian *ad litem* for the infants, counsel learned in the law was assigned by the court to represent the guardian, and he has ably and exhaustively, both orally and on brief, advocated the interests of the infants.

Upon this whole matter I am constrained to hold that the trust attempted to be created by the testator is void because it violates the rule against perpetuities; that, consequently, the *corpus* of the estate vested in the children and next of kin of the testator upon his decease, and that they are entitled to enjoy it in possession, subject to a trust fund to be carved out of it sufficient in amount to produce the widow's annuity during the term of her natural life; and the trustees must account. Directions for the accounting will be given on motion and on notice, if such course becomes necessary.