9 N.J. Super. 595 (1950)
76 A.2d 36
THE HACKENSACK TRUST COMPANY, AS TRUSTEE UNDER TRUST INDENTURE DATED JULY 3, 1928, MADE BY ADOLPH H. BARKERDING, AND AS ONE OF THE EXECUTORS OF THE LAST WILL AND TESTAMENT OF SAID ADOLPH H. BARKERDING, DECEASED, PLAINTIFF,
v.
CHARLOTTE J. BARKERDING, ET AL., DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided October 16, 1950.
*597 Messrs. Wurts & Plympton, attorneys for plaintiff.
Mr. Warren Dixon, Jr., attorney for defendants Charlotte J. Barkerding, Ellis Barkerding and Helen B. Neuberg.
Messrs. Winne & Banta, attorneys for defendants Peoples Trust Company and Sara E. Barkerding.
GRIMSHAW, J.S.C.
On July 3, 1928, Adolph H. Barkerding, of the Borough of Park Ridge, in Bergen County, executed *598 a declaration of trust by which he transferred to the Hackensack Trust Company as trustee, 200 shares of the common stock of Mittag & Volger, Inc.:
"IN TRUST, NEVERTHELESS, for the following uses and purposes, and subject to the following terms, conditions and powers hereinafter set forth, that is to say:
"FIRST: To hold and manage the same and invest and reinvest any surplus of net income as hereinafter stipulated;
"SECOND: To pay the entire net income as it accrued after deducting the necessary expenses incident hereto, unto the Trustor for and during his lifetime, and upon the death of the Trustor to pay out of the net income as aforesaid the sum of TWENTY-FOUR HUNDRED ($2400.00) DOLLARS per annum in equal monthly installments of TWO HUNDRED ($200.00) DOLLARS payable on the first day of each month unto CHARLOTTE J. BARKERDING of the Borough of Montvale, County of Bergen and State of New Jersey, for and during her lifetime, and upon the decease of the said CHARLOTTE J. BARKERDING, the Trustee is to terminate this trust and pay over and deliver the corpus thereof and any accrued but undistributed net income after deducting the necessary expenses as herein stipulated, unto the legal representatives of the estate of the trustor, and the receipt of said legal representatives shall be full and sufficient discharge to the Trustee of its obligations hereunder.
"THIRD: As compensation for its services in the administration of this trust the Trustee shall receive five per centum (5%) of all income collected hereunder by it, and upon the termination of this trust the sum of one per centum (1%) of the fair market value of the corpus of said trust as then constituted.
"FOURTH: After the death of the Trustor the Trustee shall add the net income remaining after the payment of the fees, expenses and advances set forth above to the corpus of the trust fund after which, said income so added to corpus shall be and become a part thereof and be dealt with as such.
"FIFTH: After the death of the Trustor the Trustee may invest and keep invested such excess income added to the corpus, or any part thereof, in such securities as are permissible under the laws of New Jersey for the investment of trust funds, and in distinguishing between income and corpus the Trustee shall not amortize premiums paid for trust securities and shall take no account of discounts, and after the death of the Trustor all stock and/or extraordinary dividends shall be treated as principal and added to the trust fund so far as permissible by law."
The life beneficiary is the former wife of the donor of the trust. When the Hackensack Trust Company took upon itself the administration of the trust estate, the 200 shares *599 of stock of Mittag & Volger, Inc., had a value of $20,400 according to an appraisal made by the trustee. In 1949 the assets of Mittag & Volger, Inc., were sold and the corporation went into voluntary dissolution. With the approval of this court the trustee consented to the sale of the corporate assets and upon the retirement of the 200 shares held by it the trustee received approximately $40,000 in cash and will receive several thousand dollars more.
At no time during the life of the trust have the dividends received upon the stock been sufficient to enable the trustee to pay to the life tenant the sum of $2,400 a year, nor is it probable that the trust estate will produce hereafter that much income.
Adolph H. Barkerding died on January 1, 1929, leaving a will, which was probated in Bergen County. The Hackensack Trust Company and Thomas G. Forbes, the executors named in the will, duly qualified. In his will, the testator, after directing the payment of debts and taxes and making several specific bequests, provided as follows:
"6. I give, devise and bequeath all the rest, residue and remainder of my estate, real and personal, wherever located and of whatever character to the Peoples Trust & Guaranty Company of Hackensack, New Jersey, in trust for the purposes herein following:
"(a) To invest available cash in municipal bonds or other equally safe security, keep it invested, and to pay the net income therefrom and from all other assets of my estate with consideration to the needs of my wife and the convenience of collection as to periods of payment, to my wife, Sara E. Barkerding, for and during the term of her natural life.
"(b) For the purpose of adding to income bearing securities I empower my trustee to sell all real estate of which I may die seized and possessed and give good and sufficient deeds of conveyance therefor subject to the occupancy by my said wife of the Homestead on Ridge Avenue. I direct that the said Homestead shall be sold at such time as it may be at a fair valuation, and at that time direct that my said wife shall occupy the house on Park Avenue, or, if that shall also be sold, then my said wife shall be provided with a home suitable to her income.
"(c) Until such time as my estate shall provide sufficient income I direct and empower my trustee to pay from principal adequate cash for my wife's support, comfort, and maintenance, and, further, in its judgment and discretion, in case of the illness or disability of my *600 said wife, if income for her use shall be found to be insufficient for her care, comfort, and maintenance, to expend such portion of principal as may be deemed necessary for such care, comfort, and maintenance, during such illness or disability.
"(d) 200 shares of stock now owned by me in Mittag & Volger, Inc., of Park Ridge, New Jersey, held by the Hackensack Trust Company of Hackensack, New Jersey, in trust, is so held to assure the payment, in the event of my death, of any dividends that may accrue thereafter on such stock to my former wife, Charlotte J. Barkerding, and which stock upon the death of the said Charlotte J. Barkerding, shall revert to my estate together with any unexpended income thereof, in which event such stock and such unexpended income shall be a part of my residuary estate and disposed of accordingly.
"Upon retaking possession of such stock and income if any I direct that all future income therefrom shall be part of the income for life of my wife Sara E. Barkerding, if living.
"If it shall be necessary for the care, comfort, and maintenance of my wife, Sara E. Barkerding, I direct and empower my said trustee upon retaking possession of said stock of Mittag & Volger, Inc., to sell the same at the highest valuation possible, and that it first be offered for sale to Mittag & Volger, Inc. aforesaid.
"(e) Upon the death of my wife Sara E. Barkerding, I give, devise, and bequeath said rest, residue and remainder of my estate to my son Ellis, to his heirs and assigns forever, and to my daughter Helen, her heirs and assigns forever in the proportions of two-thirds to my son and one-third to my daughter.
"(f) To guard against any unnecessary depreciation of my estate, I specially direct that no real estate be disposed of hastily or to interested buyers but that sufficient time be taken to obtain a fair market value, and that no litigation mar the administration of my estate, the provisions with respect to which I believe are clearly indicated herein."
Acting upon the authorization contained in the will, the Peoples Trust Company of Bergen County, the testamentary trustee, from time to time has made payments of principal as well as income to Sara E. Barkerding, the life beneficiary. As a result of such payments the principal of the testamentary trust has been completely exhausted and Sara E. Barkerding has received no payments therefrom for a number of years.
On August 1, 1950, Charlotte J. Barkerding as life beneficiary under the inter vivos trust, Sara E. Barkerding, life beneficiary under the testamentary trust, Helen B. Neuberg and Ellis Barkerding, ultimate remaindermen under both of the trusts, entered into an agreement, as follows:
*601 "MEMORANDUM OF SETTLEMENT, AND FOR ACCELERATION OF TRUST CREATED BY ADOLPH H. BARKERDING
"WHEREAS, Adolph H. Barkerding created a trust by declaration or indenture of trust dated July 3, 1928;
"AND WHEREAS, Charlotte J. Barkerding, as life tenant, Sara E. Barkerding, as contingent life tenant under the Will of Adolph H. Barkerding, deceased, and Helen B. Neuberg and Ellis Barkerding, as remaindermen under the Will of Adolph H. Barkerding, deceased, are the sole parties in interest in said trust;
"AND WHEREAS, said parties in interest desire to accelerate said trust and terminate the same, and have agreed among themselves for such acceleration and termination;
"NOW THEREFORE, THESE PRESENTS WITNESSETH:
"(1) That said parties in interest hereby request The Hackensack Trust Company, as trustee under said indenture of trust, to take such action in the present proceeding pending in the Superior Court of New Jersey, Chancery Division, wherein The Hackensack Trust Company as such trustee and as one of the executors of the Last Will and Testament of Adolph H. Barkerding, deceased, is plaintiff, and Charlotte J. Barkerding and others are defendants, as may be necessary and proper to accelerate said trust and to terminate the same.
"(2) It is hereby understood and agreed and that there shall be paid to Sara E. Barkerding, in full and complete satisfaction of her contingent life interest in said trust, out of funds now in the hands of the trustee, the sum of Eight Thousand ($8,000.00) Dollars upon her executing such proper documents as may be required by counsel for the trustee and for the life tenant, Charlotte J. Barkerding, and for the remaindermen.
"(3) That after the payment of or provision for such taxes as may be levied against the trust fund, and the payment of such commissions and counsel fees as may be allowed by the court, the balance of said trust fund, as shall then remain in the hands of the trustee, shall be paid jointly to Charlotte J. Barkerding, Helen B. Neuberg, and Ellis Barkerding, whereupon said Charlotte J. Barkerding, Helen B. Neuberg and Ellis Barkerding shall execute and deliver to the trustee such release and discharge as counsel for the trustee may require.
"(4) That if any further funds in addition to those now in the possession of the trustee shall come into the trustee's hands as the result of escrow money held by C-F-M-S Corporation, the same shall be paid forthwith to Charlotte J. Barkerding, Helen B. Neuberg and Ellis Barkerding, jointly, upon proper release and discharge thereof to the trustee, without further charge, counsel fee or commission.
"It is the purpose of this memorandum agreement to evidence the fact that Charlotte J. Barkerding, Sara E. Barkerding, Helen B. Neuberg and Ellis Barkerding, as the parties in interest in said trust fund, have agreed as to the amount to be paid Sara E. Barkerding in full satisfaction of her contingent life interest in said fund, and for the acceleration of the trust and the distribution of the balance *602 remaining in the hands of the trustees after the proper charges for commissions and counsel fees.
"IN WITNESS WHEREOF, the said parties in interest have hereunto set their hands and seals this 1st day of August, 1950."
On December 19, 1949, the Hackensack Trust Company, as trustee under the inter vivos trust, filed a complaint in which, among other things, it sought the court's instruction as to whether the trustee should consent to the sale of the assets of Mittag & Volger, Inc. On January 27, 1950, by judgment of that date, the trustee was instructed to consent to the sale of the assets of Mittag & Volger, Inc., and was directed upon receipt of the sum paid in liquidation of the 200 shares of the capital stock of Mittag & Volger, Inc., to file its first intermediate account of its administration of the trust, all other matters being reserved until the account had been filed.
On August 31, 1950, Charlotte J. Barkerding, Helen B. Neuberg and Ellis Barkerding filed a cross-complaint in which they sought a judgment for the acceleration and termination of the inter vivos trust of July 3, 1928, and the testamentary trust set up by the will of Adolph H. Barkerding, deceased, and a distribution of the trust fund in accordance with the agreement executed between the two life tenants and the remaindermen under date of August 1, 1950. By its answer to the cross-claim, the plaintiffs seek a dismissal of the counterclaim on the ground that it fails to state a cause of action. The matter is presently before me upon the return of an order to show cause why the two trusts should not be accelerated and terminated and distribution of the corpus made in accordance with the agreement of August 1, 1950.
In New Jersey it must be considered to be settled that the beneficiaries of a trust may not require the acceleration and termination of the trust if such action would be contrary to the intention of the settlor. Mesce v. Gradone, 1 N.J. 159 (1948). And it is equally well settled, in the absence of some controlling equity or an express or clearly implied provision to the contrary, that where the settlor provides *603 that the corpus of the trust shall go to certain designated remaindermen after the expiration of the life estate, he will be presumed to have intended that the distribution or payment to the remaindermen shall take place at the termination of the life estate irrespective of whether such termination is by the death of the life tenant or results from some other means. Beideman v. Sparks, 61 N.J. Eq. 226 (Ch. 1900); affirmed, 64 N.J. Eq. 374 (E. & A. 1901); Anthony v. Camden Safe, &c., Co., 106 N.J. Eq. 41 (Ch. 1930).
Upon the authority of the above cases it would seem clear that the inter vivos trust under consideration could be accelerated and terminated provided the life estate of Charlotte J. Barkerding was ended either by the death of the life tenant or by some other means. And for the same reason there would appear to be no obstacle to the termination of the testamentary trust upon the extinguishment of the life estate of Sara E. Barkerding. The mere fact that under the testamentary trust, the trustee, in its discretion, has power to supplement income with payments of principal does not, in my opinion, alter the situation. If then, both trusts, standing alone, may, in appropriate circumstances, be accelerated and terminated, I can see no reason why both trusts should not be terminated in the same action.
That such termination and distribution in accordance with the terms of the agreement of August 1, 1950, would not do violence to the intention of the settlor is clear from a reading of the two instruments. Plainly, Mr. Barkerding was anxious to provide for his former wife and for his widow during their respective lives, and to secure to his children the ultimate enjoyment of his estate. An examination of the will discloses his solicitude for his widow. She was to get the income and, if necessary, the principal of the testamentary trust. In addition, she was to have a life estate in the inter vivos trust after the death of Charlotte J. Barkerding, the present life tenant. What he could not foresee was that subsequent events would frustrate or are likely to frustrate his intention. As events have turned out, the widow, the favored beneficiary, *604 is without funds. Of course, if she outlives Charlotte J. Barkerding she will receive the benefit of the inter vivos trust. However, each of the life beneficiaries is upwards of 77 years of age and the length of their respective lives is highly speculative. Under the circumstances as they presently exist, an arrangement by which both life tenants might presently enjoy the bounty of Mr. Barkerding would be in accord with his intentions.
I would be disposed to approve of the termination of the two trusts were it not for the fact that the agreement upon which the defendants rely presents an insuperable obstacle to a grant of the relief sought. It is not nor was it intended to be, in itself, a valid and effectual release to the two trustees. In fact, the Peoples Trust Company of Bergen County, the testamentary trustee, designated to receive the corpus of the inter vivos trust upon the death of the life tenant, is completely ignored. The release which the life tenants are, in the future, to give upon request, will run only to the Hackensack Trust Company, the inter vivos trustee. And the agreement is not to become effective unless and until this court has decreed the termination of both trusts.
There has been no absolute and unconditional release and the agreement does not effectuate an unconditional termination of the life estates. Hence it does not afford a valid basis for a judgment that the period of distribution has arrived and that the defendants presently are entitled to receive the corpus. Bennett v. Fidelity Union Trust Co., 122 N.J. Eq. 455 (Ch. 1937).
The counterclaim will be dismissed.